**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | | |
|---|---|---|
| **CORNELIUS WREN on Behalf of** | § | |
| **Himself and on Behalf of All Others** | § | |
| **Similarly Situated,** | § | **CIVIL ACTION NO. 1:18-cv-168-** |
| | § | **LMB/MSN** |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **GCB SERVICES, LLC,** | § | |
| | § | |
| **Defendant.** | § | |
| | § | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS'**
**CONSENT MOTION FOR APPROVAL OF SETTLEMENT**

Plaintiff Cornelius Wren, on behalf of himself and on behalf of all others similarly situated ("Plaintiffs"), and with Defendant's consent, files this Memorandum of Points and Authorities in Support of Plaintiffs' Consent Motion for Approval of Settlement and would respectfully show the Court the following:

## I.        INTRODUCTION

The Parties have reached a settlement of the pending dispute concerning unpaid overtime claims under the Fair Labor Standards Act, 29 U.S.C § 201 *et seq.* ("FLSA"). The settlement provides 63 "Field Engineers" who filed opt-in forms in this matter with compensation for their claims under the Fair Labor Standards Act ("FLSA").

Plaintiff filed this lawsuit as a collective action under the FLSA on February 14, 2018. (Doc. 1.) The central allegation in Plaintiff's complaint was the non-payment of overtime wages arising from Defendant's classification of Plaintiff and all similarly situated field engineers as independent contractors. As a result of such classification, Defendant paid Plaintiff and the other

1

field engineers a daily rate of pay but did not pay them additional compensation when they worked more than 40 hours in a workweek.

On July 20, 2018, the Court granted the Plaintiff's Motion for Conditional Certification. (Doc. 35). Plaintiff Wren and three opt-in Plaintiffs had already joined this case at that point. 59 more individuals later filed notices indicating their intent to join this case. The settlement at issue resolves the claims of 63 people in this case, including named Plaintiff Cornelius Wren and the 62 other individuals who filed opt-in forms.

During discovery, Defendant provided Plaintiff's counsel with pay records for the Plaintiffs and Class Members during the relevant time period covered by this lawsuit. Using these records, the Parties calculated damages they believed could be available to this class of workers. Based upon the dates of employment for the Plaintiffs and Class Members produced by Defendant, based on relevant statute of limitations considerations, and based on the pay data produced by Defendant, Plaintiff calculated damages for both two and three-year statute of limitations. Under Plaintiff's theory, without considering liquidated damages, the total damages owed for a three-year period under Plaintiff's calculations equaled $250,980.22. Under Defendant's theory, Plaintiffs were owed nothing.

On September 13, 2018 the Parties attended private mediation. During mediation, the Parties discussed the potential damages owed to the Plaintiffs and Class Members, and the merits of the case. With help from the mediator, the Parties were able to reach a settlement totaling $210,000. The parties calculated damages based on the number of workweeks Plaintiff and Class Members worked (this was a contested issue) multiplied by an average amount of overtime owed per Plaintiff per week, as derived from calculating the damages per week for Plaintiff Wren and

the first three opt-in Plaintiffs. The resulting composite average overtime owed per week was applied to the class.

Now Plaintiff requests, with Defendant's express consent, that the Court approve this settlement. The final terms of the settlement are reflected in the agreement reached by Parties, attached here as Exhibit "1."

## II.     ARGUMENTS AND AUTHORITIES

"Ordinarily there [is] no need" for the Court to approve the settlement of a "dispute between employer and employees [because] people may resolve their own affairs, and an accord and satisfaction bars a later suit." *Walton v. United Consumer Club, Inc.*, 786 F.2d 303, 306 (7th Cir. 1986). However, this case involves claims for unpaid overtime wages brought pursuant to the FLSA, which is "designed to prevent consenting adults from transacting about minimum wages and overtime pay." *Id.* "Courts therefore have refused to enforce wholly private settlements." *Id., citing Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352 (11th Cir. 1982).

Instead, most courts recognize only two valid ways by which an individual can release or settle a FLSA claim: (1) a DOL-supervised settlement under 29 U.S.C. § 216(c); or (2) a court-approved stipulation of settlement. *Lynn's Food Stores,* 679 F.2d at 1353. Settlements in the context of litigation, where there are bona fide issues in dispute and where employees are represented by "an attorney who can protect their rights under the statute" are subject to approval by district courts "in order to promote the policy of encouraging settlement of litigation." *Lynn Food Stores*, 679 F.2d at 1354.

To merit Court approval, an FLSA settlement must resolve a bona fide dispute over FLSA provisions. *Lynn's Food Stores,* 679 F.2d at 1355. A bona fide dispute exists when an employee makes a claim that he or she is entitled to overtime payment. To settle such a dispute, there must

be a resolution of the number of hours worked or the amount due. *Lomascolo v. Parsons Brinckerhoff, Inc.*, No. 1:08-cv-1310 (AJT/JFA), 2009 WL 3094955 at * 16 (E.D. Va. Sept. 28, 2009). There has been a resolution of the amount due in this case. The Parties have negotiated at arms' length and agree that the settlement is fair and represents a reasonable compromise of the disputed issues in this case.

In addition, the settlement must be fair and reasonable. The 4th Circuit will generally follow the guidelines for approval set by the 11th Circuit in *Lynn Food Stores* in deciding whether an FLSA settlement is fair and reasonable. *See Patel v. Barot*, 15 Supp. 3d 648, 654 (E.D. Va. 2014); *see also Hargrove v. Ryla Teleservices, Inc.*, No. 2:11-cv-344, 2013 WL 1897027, at *2 (E.D. Va. Apr. 12, 2013). District Courts in the Fourth Circuit, when tasked to approve FLSA settlements, consider the following factors in reviewing an FLSA settlement:

> (1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiffs; (5) the probability of plaintiffs' success on the merits and (6) the amount of the settlement in relation to the potential recovery.

*Patel*, 15 F. Supp. 3d at 656.

The Parties resolved a *bona fide* dispute in this case and the settlement is fair and reasonable. Each factor identified above in *Patel*, favors approval of this settlement agreement as discussed below.

### A.    The Parties had a *bona fide* dispute over FLSA classification

To merit court approval, the settlement must resolve a *bona fide* dispute over an alleged violation of the FLSA. *Lomascolo*, 2009 WL 3094955, at *16 (*citing Lynn's Food Stores*, 679 F.2d at 1355). A *bona fide* dispute clearly exists in this case. Specifically, Plaintiff and Class Members assert that Defendant violated the FLSA because it allegedly misclassified Class

4

Members as independent contractors exempt from overtime pay. Defendant maintains that it has factual evidence and legal defenses to this action and specifically denies liability. In addition, Defendant's assertion of an affirmative defense shows that this was a bona fide dispute over whether overtime wages were due. *See Lomasccolo*, 2009 WL 3094955, at *16. If Plaintiff and the Class Members ultimately prevailed, Defendant would be faced with the prospect of a significant monetary verdict, as well as the obligation to pay litigation fees and costs. Similarly, if Defendant ultimately prevailed, Plaintiffs and the Class Members would face dismissal and no recovery of any kind. Accordingly, the Court should conclude that a bona fide dispute between the Parties existed.

### B.    The Proposed Settlement is Fair, Reasonable, and Adequate

The Parties negotiated at arm's length, through qualified counsel. The settlement provides relief to the Class Members and eliminates the inherent risks both sides would bear if this case were to continue. Given these circumstances, a presumption of fairness should attach to the proposed settlement. *See Lomascolo*, 2009 WL 3094955, at *10 (noting that "[t]here is a strong presumption in favor of finding a settlement fair that must be kept in mind in considering the various factors to be reviewed in making the determination of whether a settlement is fair, adequate and reasonable . . . A court is entitled to rely on the judgment of experienced counsel for the parties in performing this balancing task and absent fraud, collusion or the like, a court should be hesitant to substitute its own judgment for that of counsel.") (citation and internal quotation marks omitted); *see also Lynn's Food Stores, Inc.*, 679 F.2d at 1354 (recognizing that courts rely on the adversary nature of a litigation FLSA case resulting in settlement as an indication of fairness). An analysis of the six specific factors the 4th Circuit has articulated also compels the conclusion that the settlement is fair and reasonable.

### 1. Significant discovery took place in this case

Discovery was set to close in this matter on September 28, 2018 and the Court was informed that a settlement had been negotiated with less than one month remaining in the discovery period. An initial scheduling order was entered in this case on March 22, 2018, with discovery due by August 10, 2018. (Doc. 10.) Plaintiff served a Request for Disclosures, several Interrogatories and a lengthy Request for Production of documents. Plaintiff deposed the Defendant's corporate representative twice in this case and deposed one fact additional fact witness. Discovery was twice extended in this case, first until August 31, 2018 and then until September 28, 2018. (Docs. 51 and 74.) Defendant also served written discovery on Plaintiff and several opt-in Plaintiffs in this case and Plaintiff provided answers and responsive documents.

The parties have engaged in an appropriate amount of discovery prior to reaching this settlement. As discussed above, the parties have produced hundreds of pages of documents in response to written discovery requests. By the time of the settlement, both Plaintiff and Defendant had tentatively scheduled more depositions in the event the case did not settle; however, both parties had adequately investigated the merits and demerits of the case. Because of this, the parties engaged in a successful mediation, having conducted enough discovery to fairly evaluate the liability and damages aspect of this case. Thus, this factor weighs towards approving the settlement.

## 2. The litigation was expensive, complex, and poised to become even more contentious

The stage of proceeding, complexity, expense, and likely duration of litigation weigh in favor of approving the settlement. Conditional certification was granted, and the court has facilitated notice to putative opt-in Plaintiffs. This case has been litigated aggressively by both parties for close to eight months, through significant motions practice, multiple hearings, and a comprehensive discovery strategy. Several issues have surfaced in discovery, and though some

6

have been resolved either by court order or agreement between parties, several legal and factual issues remain unresolved, adding a sizeable amount of uncertainty and risk into the equation.

Additionally, on the day of settlement (Thursday, September 13, 2018) three motions were on the Court's docket for the next day, and had the parties not consented to withdraw pending motions without prejudice, the Court would have heard them the next day. The motions were: 1) Plaintiff's Motion for Attorney's Fees and Costs (Doc. 97), Defendant's Second Motion for Extension of Time to Complete Discovery (Doc. 106), and Plaintiff's Motion for Sanctions and Attorney's Fees (Doc. 108). An unfavorable ruling for either party on the Motion for Sanctions could have increased the cost and the risk of litigating this case significantly.

Regardless of the ruling on Plaintiff's Motion for Sanctions and Attorney's Fees (Doc. 108), this case was headed towards summary judgment or trial, both expensive propositions. The Parties would have billed extensive time to prepare motions for summary judgment, and Defendant would have, in addition, filed a complicated, expensive motion for decertification. In sum, the road to recovery for the Parties could have been long and arduous, with no recovery or an adverse judgment at the end.

The Parties decided to objectively assess the strengths and weaknesses of their respective cases based on the events of the case and the discovery conducted by September 13, and the Parties decided to settle. Thus, this factor weighs towards approving the settlement.

### 3. The Parties engaged in arms' length negotiations and there was no fraud or collusion in the Settlement

The Settlement Agreement was procured by arms-length negotiations between the Parties and their counsel. Plaintiff's counsel and Defendant's counsel zealously litigated their case, as evidenced by the fact that each party filed several substantive and procedural motions, responses, and replies before this court, including several discovery related motions that ultimately forced

Parties to weigh the risks of continuing litigation. (*See* Docs. 17, 36, 60.) There is a presumption that no fraud or collusion occurred between counsel, in the absence of any evidence to the contrary. *Lomascalo*, 2009 WL 3094955, at *12. There is absolutely no evidence of fraud or collusion in this case. Thus, this factor weighs towards approving the settlement.

### 4.  Plaintiff and Class Members are represented by highly experienced counsel

The Plaintiffs were represented by the law firm Kennedy Hodges in this case. Kennedy Hodges specialized in class action and collective action cases, specifically in wage & hour litigation. The Plaintiff and Class Members were represented by two partners at Kennedy Hodges, Don Foty, and Gabriel Assaad.

Mr. Foty has 12 years of experience in the field and has been named lead counsel on 122 FLSA cases in Federal Court in the last five years alone. He has secured millions of dollars in unpaid overtime pay for his clients and has been named as one of Houston's top lawyers by Houstonia magazine from 2014 to present. He has served as a contributing editor to the American Bar Association FLSA Midwinter Report from 2016-2018 and has spoken before the Houston Bar Association on the Fair Labor Standards Act. http://www.kennedyhodges.com/bio/don-foty.cfm.

Mr. Assaad has seventeen years of experience practicing law and is counsel on numerous complex litigation and multidistrict litigation cases around the country. He has been lead counsel on several wage and hour class action cases. He is a graduate of Vanderbilt Law School, and is licensed to practice in Texas, Virginia, and D.C. He is also admitted to the U.S. Court of Appeals 4th Circuit and has litigated wage & hour and other cases on behalf of large groups of Plaintiffs across the country. http://www.kennedyhodges.com/bio/gabriel-a-assaad.cfm.

Thus, this factor weighs towards approving the settlement.

### 5.  The probability of Plaintiffs' success on the merits warrants an approval of this Settlement

This case involves a *bona fide* dispute over whether the Field Engineers are independent contractors or employees under the FLSA. There is a risk to both sides if litigation were to continue. A court evaluating the issue, say in a summary judgment context, would perform a multi-factorial analysis of the "economic realities" of the Plaintiff and Class Members. *See Schultz v. Capital Intern. Sec., Inc.,* 466 F.3d 298, 304-05 (4th Cir. 2006). This analysis could result in a ruling in Plaintiff's favor, but there is a chance that it would not, leaving Plaintiff with the prospect of no recovery at all in the case. The discovery taken by both sides demonstrates that Plaintiff would have likely faced significant hurdles prior to gaining recovery in this case. Further, even if Plaintiff could overcome these hurdles, and prevail in summary judgment or at trial, there was a risk that Defendant, a small limited liability company, would be unable to pay monetary damages as well as extensive attorney's fees incurred in preparing for summary judgment or jury trial. This risk of non-payment, as well as the risk involved for both parties in the Court's evaluation of the economic realities of the Plaintiff and Class Members, weighs in favor of approval for this settlement.

### 6. The amount of the settlement in relation to the potential recovery warrants approval of this Settlement

The Parties settled the case for $210,000. The settlement agreement calls for the first payment of $100,000 to be made within 30 days of the settlement; the second payment will be made in $5000 installments for 22 months.[1] The settlement contemplates a general release from Cornelius Wren, the named Plaintiff, and a wage and hour release from the opt-in Plaintiffs. (*See*

---

[1] Because opt-in Plaintiff Jaysinghe Sai Gauri worked for GCB pursuant to an Optional Practical Training ("OPT") visa, GCB will need to report that individual's settlement payment on an IRS Form W-2, with appropriate employment-tax withholdings. To account for GCB's need to withhold employment taxes, GCB will provide Plaintiffs' Counsel with a separate check made payable to this individual in the entire amount of the individual's settlement payment, less applicable withholdings, at the time of the initial $100,000.00 payment.

9

Exhibit "1.") Plaintiff's counsel has voluntarily reduced his attorney's fees in this case from 40% of recovery to one-third of the settlement. Attorney's fees are $70,000. For his cooperation and efforts in litigation and especially in discovery, Plaintiff's counsel move for an incentive award of $9,000 for named Plaintiff Cornelius Wren. The case expenses borne by Plaintiff's counsel in this case are $43,000. Thus, the net settlement balance is $88,000 for the Class.

There were many uncertainties involved in calculating the exact number of hours worked by Plaintiff and Class Members, or the exact amount of overtime owed, partly because Defendant admitted that it did not keep precise records of overtime hours. Defendant did not keep track of overtime hours because it thought the Field Engineers were independent contractors not owed overtime pay. Plaintiff, relying on 1) discovery produced by Defendant, 2) his own recollection and records, and 3) on the testimony of the first three opt-ins to join the case (Andre Gilmer, Lamar Hall, Andrew Kelly; *See* Doc. 4), calculated an average of $84.79 owed in overtime for one week for each Plaintiff. This figure was a composite of the total owed per week for the first four Plaintiffs. Plaintiff then applied this "per week average" to the number of workweeks that Plaintiff and Class Members worked within the applicable 2 or 3-year statute of limitations timeframe. Thus, the rationale used to calculate damages considered hours worked, dates of employment, statute of limitations considerations, and applied it to a composite average amount of overtime per week. The eventual amount of settlement considered risk and cost on top of the factors just mentioned.

Using the Plaintiff's calculations as a benchmark, Defendant owed Plaintiffs $250,980.22 for a three-year statute of limitations period. The gross settlement amount recovers 83.6% of the full three-year recovery amount when compared to Plaintiff's calculations. The settlement recovers $210,000 from Defendant even though Defendant believes that Plaintiffs are owed nothing under

the law. Thus, Plaintiff has secured an exemplary result for the Class. The final terms of the allocation of the settlement to the class are reflected in the attached Exhibit "2". Plaintiffs' counsel believes that the estimated settlement payments reflect a satisfactory recovery in this case.

**C.      Named Plaintiff Cornelius Wren has the authority to settle this lawsuit on behalf of the FLSA Class**

This lawsuit was certified by the Court as a collective action. (Doc. 35.) On every consent form filed by every opt-in Plaintiff in this case, opt-in Plaintiffs have authorized Mr. Wren to file and prosecute this matter in their name, on their behalf, and designated him explicitly to make negotiation decisions, including settlement, for the Class. (*See, e.g.* Docs. 4-1, 4-2, 4-3, 48, 64, 75, 76, 82-86, 93, 95.) "In a collective action under the FLSA, a named plaintiff represents only himself until a similarly situated employee opts in." *Stone v. SRA International, Inc.*, Civil Action No. 2:14-cv-209, 2015 WL 12748271 at * 4 (Mar. 20, 2015) (*quoting Simmons v. United Mortgage & Loan Investment, LLC*, 634 F.3d 754, 758 (4th Cir. 2011)). Sixty two similarly situated Plaintiffs filed forms signaling their intent to opt-in to this case. Thus, Mr. Wren has explicit authority to bind opt-in Plaintiffs to this settlement.

**D.      Opt-in Plaintiffs have agreed to a limited release of their wage and hour claims**

As contemplated by the Settlement Agreement (Exhibit "1"), named Plaintiff Cornelius Wren will sign a general release, whereas opt-in Plaintiffs will sign a limited release of their wage and hour claims. Several courts have held that endorsing the settlement check by an opt-in Plaintiff constitutes effective release. *See, e.g., Lazarin v. Pro Unlimited, Inc.*, No. C11-03609 HRL, 2013 WL 3541217 at * 3 (N.D. Cal. July 11, 2013) ("Under the Settlement Agreement, the Named Plaintiffs, the FLSA Class Members who cash their settlement checks, and the California Class Members release all claims against Pro Unlimited and Juniper that were alleged in this case or that reasonably arise out of the facts alleged in the case."); *See, e.g., Seghroughni v. Advantus Rest.,*

11

*Inc.*, No. 8:12-CV-2000-T-23TBM, 2015 WL 390329, at *1 (M.D. Fla. Jan. 28, 2015) ("By endorsing his or her settlement check, each FLSA Class Member shall release Defendants from all FLSA claims, as well as state wage and hour claims, …. through the date on which the Court grants preliminary approval of the settlement."); *see also Ortiz v. Chop't Creative Salad Co. LLC*, No. 13 CIV. 2541 KNF, 2014 WL 1378922, at *2 (S.D.N.Y. Mar. 25, 2014) ("[T]he FLSA class members are defined as delivery workers employed by the defendants between April 16, 2010, and August 21, 2013, and who endorse their settlement checks or have filed a consent to join the lawsuit."); *see also Lizondro-Garcia v. Kefi LLC*, No. 12 CIV. 1906 HBP, 2014 WL 4996248, at *2 (S.D.N.Y. Oct. 7, 2014) ("Defendants will not be released from the FLSA claims of FLSA collective members who do not endorse their settlement checks."). Named Plaintiff Wren has the authority to bind himself and the opt-ins to the settlement agreement.

### E.    The attorney's fees sought by Plaintiff are fair and reasonable

Additionally, the amount for attorneys' fees are fair and reasonable. The FLSA provides that a Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action." 29 U.S.C. § 216(b). Plaintiffs' Counsel investigated the claims, engaged in significant motion practice, analyzed pay data, managed communication with all Class Members, and performed other work that resulted in a settlement. When evaluating a claim for fees, a party's success in the litigation is the "most critical." *Hensley v. Eckerhart,* 461 U.S. 424, 436 (1983). In determining the reasonableness of the requested attorney's fee, the court in *Shaw v. Toshiba America Information Systems, Inc.*, 91 F. Supp. 2d 942 (E.D. Tex. 2000) considered the comparative data about Rule 23 class settlements summarized by the National Economic Research Associates. The NERA Study relied upon by the *Shaw* Court showed that the average result achieved for class members was only **7% to 11% of claimed damages**. Measured against that standard, the settlement in this case

is exemplary. Under Plaintiffs' theory of the case, Plaintiffs' Counsel have successfully prevailed and recovered **over 80%** of the three-year amount of damages allowed by the statute of limitations for "willful" violations under the FLSA. They acquired a class settlement that provides sizeable recovery for each Class Member.

Plaintiffs' Counsel have acquired a class settlement that provides for a reasonable estimate of damages given the facts of the case and the relative merits of Plaintiffs' claims and Defendant's possible defenses. Under Defendant's theory, the Plaintiffs would be owed zero. Furthermore, the legal theories involved required substantial expertise in the wage and hour field. Many attorneys would not have understood the nuanced arguments asserted, nor would they have been able to discern whether the Plaintiffs even had a viable claim. Additionally, other lawyers may not have had the expertise to ascertain and evaluate the possible damages awards available to the Class Members in this case. Thus, the work of Plaintiffs' Counsel provided a significant benefit to the Class Members.

Ultimately, the attorneys' fees requested by Plaintiff's counsel should not be altered because counsel efficiently resolved this case early on rather than prolonging the litigation and increasing the potential fees. As the Manual for Complex Litigation recognizes, "one purpose of the percentage method is to encourage early settlements by not penalizing efficient counsel, thus ensuring competent counsel continue to be willing to undertake risky, complex, and novel litigation." Manual for Complex Litigation (4th) § 14.121. Had this case not settled, Plaintiffs' Counsel would have vigorously litigated the case without any promise of success and compensation. At every step of the litigation, Defendant could have succeeded. Therefore, the Class Members were at great risk of non-payment. This risk of non-payment strongly supports the amount requested here.

Lastly, Plaintiff's counsel has voluntarily reduced its attorney's fees from 40% to 33.3% in this case. The Eastern District has "routinely approved percentage recoveries in FLSA cases approaching forty percent of the total recovery." *Winingear v. City of Norfolk, Va.*, Civil Action No. 2:12-cv-560, 2014 WL 3500996 at * 6 (July 14, 2014). (approving a contingency fee of 40% for Plaintiff's counsel in an FLSA case).

### F.    The percentage fee recovery is substantially lower than the Lodestar figure.

Plaintiff's Counsel has spent over 400 hours and has billed approximately $400,000 in fees in this case which Plaintiff aggressively litigated for over eight months in the Eastern District of Virginia. Thus, Counsel's anticipated Lodestar amount is considerably higher than the $70,000 in fees counsel seeks under the Settlement Agreement. The multiplier in this case is thus under 1. The Eastern District has generally held that "lodestar multipliers falling between 2 and 4.5 demonstrate a reasonable attorneys' fee." *See In re The Mills Corp. Securities Litigation*, 265 F.R.D. 246, 265 (E.D. Va. Dec. 23, 2009) (approving a multiplier of 1.3 in a securities class action case); *See George v. Duke Energy Retirement Cash Balance Plan*, 8:06-CV-00373-JMC, 2011 WL 13218031 at * 9 (E.D. Va. May 16, 2011) ("The time accrued by Class Counsel has a market value approaching $8.5 million based on hourly rates at the top end of the range, indicating a lodestar multiplier of less than 1.1, which clearly supports the requested fee award.") The attorney's fees sought here are manifestly reasonable.

Counsel expended significant time and labor in this case. As stated earlier, over 400 hours were expended in this case which required extensive discovery review, three depositions, several meet and confers, a multitude of motions for sanctions, attorney's fees, and motions to compel. There were several hearings in the case requiring travel, and a full day of mediation on September 13, 2018.

For the sake of illustration, when dividing 400 hours by the total attorney's fees earned ($70,000) the average rate equals $175 per hour for attorney's fees. This rate of award is below other cases in the district. *See Walker v. Dovetails, Inc.,* No. 3:10-cv-526, 2010 WL 5878336, at *3 (E.D.Va. Nov. 30, 2010) (finding hourly rates of $250 and $350 reasonable).

### G.    An analysis of The Johnson Factors is not necessary, but the factors actually support the attorney's fees sought here

"In calculating an award of attorneys' fees, a court must first determine a lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate." *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243–44 (4th Cir. 2009) (citing *Grissom v. The Mills Corp*., 549 F.3d 313, 320 (4th Cir. 2008)). The court may consider the twelve *Johnson* factors when determining the reasonable rate in calculating the Lodestar in the first place or may use the factors when adjusting the final award after calculating the award. *See, e.g., McAfee v. Boczar*, 738 F.3d 81, 89 (Dec. 12, 2013). The court may not consider the *Johnson* factors twice. *Crump v. United States Dept. of Navy by and through Mabus*, 245 F.Supp.3d 692, 699 (E.D.Va. Mar. 27, 2017). The court should also depart from the lodestar in rare and extraordinary circumstances. 738 F.3d at 89.  The twelve factors are:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978) (adopting the twelve factors identified by the Fifth Circuit in *Johnson v. Georgia Highway Express Inc.*, 488 F.2d 714 (1974)).

As stated above, Plaintiff's contingent fee recovery is substantially less than even a conservative estimate of the Lodestar, and thus no further qualification is warranted via the *Johnson* factors. However, each factor is discussed briefly below for the sake of thoroughness.

### 1. Time and labor expended

This factor has been discussed in Sections E and F above.

### 2. Novelty of questions raised

The questions raised in this case were novel issues regarding conditional certification, class notice, technical wage violations, a multi factorial economic realities test, as well as procedural nuances regarding scope of discovery of class and admissibility of evidence, amongst other things. The Supreme Court has held that the 'novelty and complexity of the issues' are generally reflected in the total number of recorded billable hours." *Castel v. Advantis Real Estate Servs. Co.*, Civil Action No. 2:07-cv-435, 2008 WL 3348774 at * 3 (E.D. Va. Aug. 8, 2008). (*citing Blum v. Stenson*, 465 U.S. 886, 898 (1984)). This factor, if anything, supports the attorney's fees sought under the settlement agreement..

### 3. Skill Required

Undertaking FLSA collective actions can be a significant commitment. *McNeil v. Faneuil, Inc.*, Action No. 4:15-cv-81, 2017 WL 9771834 (Nov. 8, 2017). FLSA collective actions require a detailed fact inquiry into hours worked and overtime owed. Here, counsel attempted to discover the true number of hours worked by the Plaintiffs in the face of an admitted lack of records kept by Defendant. The inquiry was detailed, and was undertaken by Plaintiff's counsel, who are

experienced, skilled FLSA counsel. This factor, if considered, supports the attorney's fees sought under the settlement agreement.

### 4. Opportunity Costs

This case requires significant travel, expenses, and hours. The inherent opportunity costs in litigating a case like this is significant and Plaintiff's counsel has incurred it here.

### 5. Customary Fee

As a start, the "Laffey Matrix" supports reasonableness of Plaintiff's attorneys' rates. http://laffeymatrix.com/see.html (last visited October 11, 2018). The Laffey matrix is not binding on this court. Though not binding on the Eastern District of Virginia, the "Laffey Matrix", an official statement of market-supported reasonable attorney fee rates which was adopted, and is periodically updated, by the United States Court of Appeals for the District of Columbia, is a helpful start to determine the reasonableness of attorneys' fees. *U.S. ex rel. Thyssenkrupp Safway, Inc. v. Tessa Structures, LLC*, No. 1:10cv512 (JCC/JFA), 2011 WL 2633902 at * 6 (E.D. Va. July 5, 2011) ("[T]he Laffey matrix is a useful starting point to determine fees."); *See also Khair v. Countrywide Home Loans, Inc.*, No. 1:10–cv–410, 2011 WL 1304916 at * 5. (E.D. Va. April 1, 2011). As the chart below shows, Plaintiff's attorneys' fee rates are in fact lower than the Adjusted Laffey Matrix rates.

| Name/Role | Years out of law school | Fee Rate Charged | Laffey Matrix Rate |
|---|---|---|---|
| Gabriel Assad/Lead Attorney/Partner | 17 | $600/hr. | $742/hr. |
| Don Foty/Partner | 12 | $735/hr. | $742/hr. |
| Ved Chitale/Associate Attorney | 1 | $350/hr. | $371/hr. |

There are several cases where the Laffey Matrix has been positively referenced by the Eastern District of Virginia in similar situations. *See Bland v. Fairfax County*, No. 1:10cv1030 (JCC/JFA), 2011 WL 5330782 (E.D. Va. Nov. 7, 2011) (granting an attorneys' fees award of $306,705.69 near the 2011 Laffey rates in a civil rights case); *Bennett v. Fairfax County*, No. 05-250A, Doc. 73, (E.D. Va. Apr. 25, 2006) (Awarding Plaintiff's counsel rates near the Laffey Matrix in a civil rights case and stating that the request for attorneys' fees was reasonable); *Cox v. Reliance Standard Life Ins. Co*., 179 F.Supp. 2d 630, 635 (E.D. Va. 2001) (finding that rates just at or slightly below the Laffey Matrix were reasonable in case where attorney had practiced focused civil litigation for over twenty-one years); *Corinthian Mortg. Corp v. Choice point Precision Mktg., LLC*, No. 1:07cv832, 2009 WL 36606 at * 4 (E.D. Va. Jan. 5, 2009) (applying a ten percent reduction to requested fees because it "will place all of the rates at or slightly below the guideline rates contained in the Laffey Matrix").

Furthermore, the Court may also rely on another metric, the "Vienna Matrix", utilized generally in complex litigation cases. However, in addition to using it in complex litigation, this district has also used the "Vienna" Matrix in determining the reasonableness of attorney's fees in a Title VII civil rights case. *See Taylor v. Republic Services, Inc.*, No. 1:12–CV–00523–GBL, 2014 WL 325169 at * 5 (E.D. Va. Jan 29, 2014) ("…the Court finds that the Vienna Metro Matrix, not the Laffey Matrices, applies in this action."); *See also BMG Rights Management (US) LLC v. Cox Commc'ns, Inc*., 234 F.Supp.3d 760, 773 (E.D. Va. 2017) (rev'd on other grounds, vacated in part on other grounds).

Plaintiff's requested fees in this case comport with the *Vienna* matrix, as shown below:

| Name/Role | Years out of law school | Fee Rate Charged | *Vienna* Matrix Rate |
|---|---|---|---|
|  |  |  |  |

| | | | |
|---|---|---|---|
| Gabriel Assad/Lead Attorney/Partner | 17 | $600/hr. | $520-$770 |
| Don Foty/Partner | 12 | $735/hr. | $520-$770 |
| Ved Chitale/Associate Attorney | 1 | $350/hr. | $25-$435 |

*Id.*

This factor, if considered, supports the attorney's fees sought under the settlement agreement.

### 6. Attorney's Expectations

With respect to Johnson factor six, the attorneys' expectations at the outset of litigation, plaintiffs' counsel in this case have all performed their services on a contingent fee basis. Contingency fees allow individuals who would otherwise have difficulty obtaining representation to access the courts. For these reasons, the existence of a contingency fee in this case justifies a higher fee award. *See, e.g., In re Abrams & Abrams, P.A.,* 605 F.3d 238, 245–46 (4th Cir. 2010) (finding that the district court erred in reducing the fee award because it "fail[ed] to consider the access to the legal system that contingency fees like the ones herein provide"). This factor, if considered, supports the attorney's fees sought under the settlement agreement.

### 7. Time Limitations

This case was heavily litigated in the span of eight months. Partly because of the aggressive prosecution of the case by the Plaintiffs, and partly because this case was brought in the Eastern District of Virginia, a court with a reputation for speed and efficiency, both sides had to quickly react to filings, court orders, and scheduling orders. This factor, if considered, supports the attorney's fees sought under the settlement agreement.

### 8. Amount in controversy and results obtained

As discussed above, the results obtained by the Plaintiff for the client are exemplary and represent over 80% of the three-year damages period. This factor, if considered, supports the attorney's fees sought under the settlement agreement.

### 9. Experience, reputation, and ability of attorney

As discussed above, the attorneys at Kennedy Hodges, LLP are experts in FLSA collective actions and complex litigation. Partner Gabriel Assed is licensed in Virginia, D.C. and Texas, and engages in complex litigation on behalf of Plaintiffs around the country. Don Foty is a renowned FLSA expert. The nature of the case is complex and specialized, as it involves advanced procedural issues under the Federal Rules, technically complicated issues relating to collective actions, FLSA exemptions, method of pay and classification of workers independent contractors versus employees involving a multi factorial analysis of the "economic realities" of the workers. The case involved a complicated damage model and numerous Plaintiffs.

Mr. Foty, who has 12 years of experience, has handled 122 FLSA cases in Federal Court in the last five years. He has secured millions of dollars in unpaid overtime pay for his clients and has been named as one of Houston's top lawyers by Houstonia magazine from 2014 to present. He has served as a contributing editor to the American Bar Association FLSA Midwinter Report from 2016-2018 and has spoken before the Houston Bar Association on the Fair Labor Standards Act. http://www.kennedyhodges.com/bio/don-foty.cfm.

Mr. Assad, with 17 years of experience, has secured millions of dollars for his clients in wage & hour cases and personal injury cases. He is also admitted to the U.S. Court of Appeals 4th Circuit and has litigated wage & hour and other cases on behalf of large groups of Plaintiffs across the country. http://www.kennedyhodges.com/bio/gabriel-a-assaad.cfm. This factor, if considered, supports the attorney's fees sought under the settlement agreement.

### 10. Undesirability of the case

This case was handled on a contingent basis. Plaintiff's counsel took on the considerable risk of no recovery. As mentioned above, contingency fees allow individuals who would otherwise have difficulty obtaining representation to access the courts. Representing these clients is risky, and many lawyers would not desire to take on such a risk of no recovery. This factor, if considered, supports the attorney's fees sought under the settlement agreement.

### 11. Nature and length of relationship between attorney and client

Because typical wage nonpayment clients only suffer actionable injury once, Plaintiff's counsel does not anticipate that it will perform any more work on Plaintiffs' behalf after the litigation is resolved. This factor supports recovery of the contingent fee.

### 12. Attorney's fees in similar cases

This factor has already been discussed in Sections E and F above.

### H.    The Service Award for Named Plaintiff should be Approved

Courts routinely approve service awards in FLSA collective action litigation if a named or lead plaintiff in a collective action establishes that they faced a peculiar or substantial risk by participating in the law suit or incurred actual expenses or disproportionate inconvenience during the litigation. *See Su v. Electronic Arts, Inc.*, No. 6:05-cv-131, 2006 WL 4692780 at *5 (M.D. Fla. Aug. 29, 2006) (awarding $10,000.00 incentive fee to plaintiff who used vacation days to travel and attend hearings); *Frank v. Eastman Kodak, Co.,* 228 F.R.D. 174, 187 (W.D. N.Y. 2005) (awarding $10,523.00 to named plaintiff who had been "actively involved in the litigation of the case ... provided counsel with assistance ... [and] feared that his role in the case 'could deleteriously affect his future employment possibilities.' "). In this District and this Circuit, courts have awarded significant service awards. *Stone v. SRA International,* Civil Action No. 2:14-cv-209, 2015 WL 12748271 at * 4 (E.D. Va. Mar. 20, 2015) (awarding two Plaintiffs $12,500 each for serving as named Plaintiffs in a FLSA collective action); *Leigh v. Bottling Group*, Civ. No. DKC10–0218,

2012 WL 460468 at * 7 (D.Md. Feb. 10, 2012) (finding a $9,000 service fee award in an FLSA collective action case to be fair and reasonable).

Plaintiff asks for a $9,000 service award in this case. Plaintiff Wren has been responsive and helpful to counsel from the beginning of this case. He took an active role in organizing the class, helping counsel understand the structure and operations of the company, and answering discovery. He produced comprehensive and sensitive tax returns, answered Interrogatories, and produced many other documents in discovery. He took the initiative to commence the action; he has been personally involved at every stage of the litigation; and, if the settlement is ultimately approved, he will have achieved a significant result, not only for those plaintiffs who would receive a settlement check for unpaid overtime wages, but also for future employees working in the same position. In sum, he has been instrumental in achieving this result. Defendant does not oppose the service award.

## I.    The costs incurred by Plaintiff's counsel should also be approved

The Settlement Agreement contemplates that Plaintiff's costs ($43,000) will be paid by Defendant out of the settlement. (Exhibit "1") These costs were incurred by Plaintiffs in prosecuting this action and were incurred by Plaintiff's counsel in travelling to the Eastern District multiple times, in taking depositions, and in various others matters including discovery and filings. Defendant does not oppose these costs. They are reasonable, and the Court should approve them.

In conclusion, Plaintiff's counsel asks for significantly less (33% of recovery - $70,000) in attorney's fees than the Lodestar amount, Defendant has agreed to pay this fee as part of the settlement, and a cursory analysis of the *Johnson* factors supports awarding the fees and costs as sought by counsel.

## III.    CONCLUSION

The terms of the settlement have been approved by named Plaintiff, his counsel, Defendant, and Defendant's counsel. The settlement was negotiated at arms' length.  The Parties entered into the Settlement Agreement voluntarily and knowingly. The Parties agree that the terms of the Settlement Agreement are reasonable, fair and just, and they settle all claims in this lawsuit. Accordingly, Plaintiff requests that the Court approve the FLSA settlement.

For the foregoing reasons, Plaintiff respectfully requests that the Court enter an order approving the Parties' Settlement Agreement. A proposed order is attached for the Court's consideration.

Respectfully submitted,


_____*/s/ Gabriel A. Assaad*_____
Gabriel A. Assaad, VSB No.: 46621
Don Foty**
KENNEDY HODGES, L.L.P.
4409 Montrose Blvd., Ste. 200
Houston, TX 77006
Tel: (713) 523-0001
Fax: (713) 523-1116
GAssaad@kennedyhodges.com
DFoty@kennedyhodges.com

*Counsel for Plaintiff*


## CERTIFICATE OF SERVICE

I certify that on November 9, 2018 I filed this motion through the Eastern District of Virginia's CM/ECF system which will serve an electronic copy on all parties of record.


*/s/ Gabriel A. Assaad*
Gabriel A. Assaad